**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KMK GROUP, LLC, a California limited liability company, | ) )  |
| | ) |
| Plaintiff, | ) Case No.  18-cv 6361 |
| | ) |
| v. | ) **JURY DEMAND** |
| | ) |
| HELCO CORP., an Illinois corporation; and CHICAGO TITLE LAND TRUST COMPANY, not personally, but as successor trustee to North Star Trust Company, as successor trustee to MB Financial Bank, as successor to Mid-City National Bank, as trustee under that certain Trust Agreement dated May 5, 2001 and known as Trust Number 2958 ("TRUST 2958"), | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) ) |

**COMPLAINT**

Plaintiff, KMK Group, LLC, a California limited liability company, by and through its counsel, as and for its Complaint against Defendants Helco Corp., an Illinois corporation ("Helco"), and Chicago Title Land Trust Company, as successor land trustee under that certain Trust Agreement dated May 5, 2001 and known as Trust Number 2958 ("Trust 2958" and, collectively with Helco, "Defendants"), states as follows:

**PARTIES**

1.     Plaintiff, KMK Group, LLC ("KMK"), is a limited liability company organized under the laws of California with its principal place of business located at 2109 East 27th Street, Los Angeles, California 90058.  KMK is managed by a single manager, who is a domiciled citizen of California.  KMK is a citizen of California.  KMK manages commercial real estate properties throughout the United States.

2.     Defendant, Chicago Title Land Trust Company ("Chicago Title"), is a corporation incorporated and existing under the laws of Illinois, with its principal place of business located at 10 South LaSalle Street, Chicago, Illinois 60603.  Chicago Title is named herein in its capacity as successor trustee to that certain Trust Agreement dated May 5, 2001 and known as Trust Number 2958 ("Trust 2958").  Trust 2958 is a land trust and a citizen of Illinois.  *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("The citizenship of a trust is that of the trustee.").

3.     Defendant, Helco Corp. ("Helco"), is a corporation incorporated and existing under the laws of Illinois, with its principal place of business located at 512 North Elmwood Avenue, Wilmette, Illinois 60091.  Helco is a citizen of Illinois.  Helco is the beneficiary of Trust 2958 and has a financial interest in Trust 2958.

## JURISDICTION AND VENUE

4.     Original jurisdiction over this matter exists under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are domiciled citizens of different States, and the amount in controversy well exceeds $75,000.00, exclusive of interest and costs, at the time of the filing of this Complaint.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim against Defendants occurred in the Northern District of Illinois.  Venue is also proper under 28 U.S.C § 1391(b)(1) because all Defendants are residents of the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

*The Operation and Easement Agreement Affecting the Shopping Center*

6.     This lawsuit arises out of a dispute relating to KMK's proposed redevelopment of certain commercial property within a retail shopping center located in McHenry, Illinois that is commonly known as McHenry Plaza (the "Shopping Center").

7.     The Shopping Center is affected by an Operation and Easement Agreement that was recorded with the Office of the Recorder of McHenry, Illinois (the "McHenry Records") on September 9, 1992 as Document No. 92R-048705, (the "Initial OEA"), a copy of which is attached hereto as <u>Exhibit 1</u>.  In the recitals to the Initial OEA, the parties thereto declared they "intend to develop and operate their respective Tracts in conjunction with each other as integral parts of a retail shopping complex, and in order to effectuate the common use and operation thereof, they desire to enter into certain covenants and agreements as part of a general plan, and to grant to each other certain reciprocal easements in, to, over and across their respective Tracts." (Ex. 1, p. 1.)

8.     The Initial OEA was amended by a First Amendment to Operation and Easement Agreement that was recorded with the McHenry Records on December 8, 1993 as Document No. 93R-075955 (the "First Amendment"), a copy of which is attached hereto as <u>Exhibit 2</u>.

9.     The Initial OEA was further amended by a Second Amendment to Operation and Easement Agreement that was recorded with the McHenry Records on May 3, 1996 as Document No. 96R-022583 (the "Second Amendment"), a copy of which is attached hereto as <u>Exhibit 3</u>.

10.     The Initial OEA, the First Amendment, and the Second Amendment are collectively referred to herein as the "OEA."

11.     A map of the Shopping Center is attached hereto as <u>Exhibit 4</u> and incorporated by reference herein.

12.     The Shopping Center is comprised of four tracts of land referred to in the OEA as Parcel 1, Parcel 2, Parcel 3 and Parcel 4, each of which contains retail commercial property.

13.     Nonparty Illiana Realty, LLC is an Indiana limited liability company, d/b/a Big R ("Big R").  Big R is the current owner of Parcel 1 of the Shopping Center and has the common address of 1860 North Richmond Road, McHenry, Illinois 60051.

14. Parcel 1 constitutes the "Target Tract" as described in the OEA.

15. Trust 2958 is the current owner of Parcel 2 of the Shopping Center and has the common address of 1700 North Richmond Road, McHenry, Illinois 60051.

16. Parcel 2 is affected by a mortgage that was recorded with the McHenry Records on September 2, 2015 as Document No. 2015R-0033201 (the "Mortgage"), a copy of which is attached hereto as Exhibit 5. The Mortgage was made and executed between Trust 2958 (referred to therein as the "Grantor") and Northbrook Bank & Trust Company (referred to therein as the "Lender"). Helco is the "Borrower" under the Mortgage, and the Mortgage was executed at the request of Helco. (*See* Ex. 5, at p. 2.)

17. Contemporaneously with the Mortgage, an assignment of rents was made and executed between Trust 2958 and Northbrook Bank & Trust Company, which was recorded with the McHenry Records on September 2, 2015 as Document No. 2015R-0033202 (the "Assignment of Rents"), a copy of which is attached hereto as Exhibit 6. The Assignment of Rents expressly defines Helco as the "Borrower." (*See* Ex. 6, at p. 7.)

18. Helco is the beneficiary of Trust 2958, and as demonstrated by the Mortgage and Assignment of Rents, Helco has a financial interest in Parcel 2 and the retail properties currently in operation within Parcel 2.

19. Helco is authorized to make decisions affecting Trust 2958's ownership interest in Parcel 2, including decisions affecting those retail properties in operation within Parcel 2.

20. Heather Mooney ("Mooney") is the President of Helco. Mooney, in her capacity as President, has the power to make binding and controlling decisions on behalf of Helco.

21. KMK is the current owner of Parcel 3, which contains approximately 27,178 square feet. The common address for Parcel 3 is 1800 North Richmond Road, McHenry, Illinois 60051.

22.     Parcel 4 is legally divided into two portions.  One portion of Parcel 4 is currently owned by Trust 2958 and has the common address of 1700 North Richmond Road, McHenry, Illinois 60051 ("Trust 2958's Portion of Parcel 4").  Helco is the beneficiary of Trust 2958 and has a financial interest in Trust 2958's Portion of Parcel 4 and the retail properties in operation within Trust 2958's Portion of Parcel 4.  Helco is authorized to make decisions affecting Trust 2958's Portion of Parcel 4, including decisions affecting those retail properties currently in operation within Trust 2958's Portion of Parcel 4.

23.     The other portion of Parcel 4 is currently owned by nonparty Aldi Inc., an Illinois corporation ("Aldi") and has the common address of 1742 South Illinois Route 31, McHenry, Illinois 60051 ("Aldi's Portion of Parcel 4").

24.     Parcel 2, Parcel 3 and Parcel 4 collectively constitute the "Developer Tract" as described in the OEA.

25.     Section 6.7 of the OEA provides, in pertinent part, that "[t]he terms of this OEA and all easements granted hereunder shall constitute covenants running with the land and shall inure to the benefit of and be binding upon he signatories hereto and their respective successors and assigns who become Parties hereunder." (Ex. 1, § 6.7.)

26.     As the current owners of the four parcels in the Shopping Center, Big R, Trust 2958, KMK, and Aldi are all bound by the terms of the OEA.

27.     Section 6.5 of the OEA governs "Approval Rights." Section 6.5(B) provides that:

> Unless otherwise herein provided, whenever a consent or approval the ("approval") is required, such approval shall not be unreasonably withheld or delayed. Unless provision is made for a specific time period, each response to a request for an approval shall be given by the Party to whom directed within thirty (30) days of receipt of such request. Any disapproval shall be in writing and the reasons therefor shall be clearly stated. If a response is not given within the required time period, the requested Party shall be deemed to have given its approval.

28.     Section 6.5(C) states that "[i]f the Approving Parties' approval is requested, unanimous approval must be given."

29.     Section 1.1 defines "Approving Party" as follows:

[T]he Party designated from time to time to make certain decisions and/or give certain approvals pursuant to the terms of the OEA. There shall be one Approving Party representing the Developer Tract and one Approving Party representing the Target Tract. Each Approving Party shall have absolute discretion to make the decisions and/or give the approvals expressly designated to be made and/or given on behalf of the real estate represented by such position regardless of whether the Approving Party then owns all or less than all of the Developer Tract or the Target Tract, as the case may be.

30.     Big R is the "Approving Party" for the Target Tract.

31.     Trust 2958 is the "Approving Party" for the Developer Tract.

32.     Helco, as the beneficiary of Trust 2958, has the power to make binding decisions as the "Approving Party" on behalf of Trust 2958, including the power to grant approve or disapprove requests for approval pursuant to § 6.5(B) of the OEA.

33.     Helco, as the beneficiary of Trust 2958 and the real party in interest with respect to Parcel 2 and Trust 2958's Portion of Parcel 4, is bound by the terms of the OEA.

34.     Helco, as the "Approving Party" for the Developer Tract, is bound by § 6.5(B) of the OEA.

35.     Helco may be held liable for any acts or omissions committed by Helco's officers or directors on behalf of Helco which result in Helco's breach of any provision of the OEA, including breach of § 6.5(B).

36.     Whenever a consent or approval is required from Trust 2958 pursuant to § 6.5(B) of the OEA, Helco shall not unreasonably withhold or delay approval.

37.     If Helco disapproves a request for consent or approval, Helco's disapproval shall be in writing and the reasons for such disapproval shall be clearly stated in accordance with the provisions of § 6.5(B) of the OEA.

***The Ground Lease for the Planned Redevelopment of Parcel 3***

38.     On December 26, 2017, KMK entered into an agreement with third party Chicago Bread, LLC, a Missouri limited liability company ("Chicago Bread") whereby KMK ground leased Parcel 3 to Chicago Bread (the "Ground Lease").  Under the Ground Lease, KMK was the landlord and Chicago Bread was the tenant.

39.     Chicago Bread is a franchisee of the bakery-café restaurant chain, Panera Bread ("Panera").  Chicago Bread was controlled and managed by a property development company named Hamra Enterprises ("Hamra").

40.     Parcel 3 is currently occupied by an out-of-business Arby's building.

41.     Pursuant to the Ground Lease, Chicago Bread intended to redevelop Parcel 3 as a prototypical Panera with a building footprint of approximately 4,500 square feet.  The site plan for the redevelopment of Parcel 3 is attached hereto as Exhibit 7.

42.     The Ground Lease provided for an initial term of fifteen (15) years, with five extension periods of five years each.

43.     Under the Ground Lease and amendments thereto, Chicago Bread's annual rent payments to KMK during the initial 15-year term would have been apportioned as follows:

| Lease Years | Annual | Monthly |
|---|---|---|
| 1-5 | $80,000.00 | $6,666.67 |
| 6-10 | $82,500.00 | $6,875.00 |
| 11-15 | $90,750.00 | $7,562.50 |

44.    As a condition precedent to the planned redevelopment of Parcel 3 in accordance with the site plan agreed to between KMK and Chicago Bread, the OEA had to be amended.

45.    All current owners of the four parcels in the Shopping Center must agree to any material amendments to the OEA in order for such amendments to be effective.  If any one parcel owner does not approve of proposed amendments to the OEA, those amendments are not effective.

46.    On or about June 7, 2018, KMK and Chicago Bread entered into a Second Amendment to the Ground Lease ("Second Amendment to GL").  The Second Amendment to GL created several deadlines and benchmarks that had to be satisfied in order for the proposed redevelopment of Parcel 3 to commence.

47.    Under Section 2 of the Second Amendment to GL, Chicago Bread, as tenant, promised to:

> [U]se good faith diligent efforts to obtain OEA approvals on terms reasonably acceptable to Tenant from all required parties under the OEA in order to redevelop the Premises as a prototypical Panera with a building footprint of approximately 4,500 square feet (the "**Redevelopment**") and to memorialize such approvals in the form of a Third Amendment to OEA (the "**Third Amendment**") approved and executed by all required parties and recorded with the McHenry County recorder's office (collectively, obtaining the foregoing approvals in terms reasonably acceptable to Tenant and memorializing same by drafting, executing and recording the Third Amendment is referred to herein as the "**OEA Contingency**").

48.    Section 2 of the Second Amendment to GL further provided that "[i]f despite good faith diligent efforts by Tenant, the OEA Contingency is not satisfied by the date that is sixty (60) days after the Effective Date (the "**OEA Deadline**"), then, as Tenant's sole remedy, Tenant may elect to terminate the lease by providing written notice to Landlord of such election not later than the date that is one (1) day after the OEA Deadline."

49. Under Section 2 of the Second Amendment to GL, the initial OEA Deadline was August 6, 2018 (60 days from June 7, 2018). If Chicago Bread did not satisfy the OEA Contingency by obtaining the approval of all parcel owners of the Shopping Center by August 6, 2018, Chicago Bread could terminate the Ground Lease.

**Helco Unreasonably Delayed Approval of KMK's Proposed Third Amendment to the OEA**

50. The initial proposed site plan for the redevelopment of Parcel 3 was sent to the owners of Parcel 1, Parcel 2, and Parcel 4 in March, 2018.

51. As a result of Helco's communications with Hamra representatives during the early months of 2018, Helco knew that Chicago Bread and KMK had requested each parcel owner's approval of certain modifications to the OEA in order to facilitate the construction of the new Panera on Parcel 3 of the Shopping Center.

52. At all times relevant to this Complaint, Mooney was authorized to act and to make decisions on behalf of Helco in her capacity as President of Helco.

53. At all times relevant to this Complaint, Mooney had the power to approve or disapprove, on behalf of Helco, any requested modifications to the OEA.

54. Immediately following the execution of the Second Amendment to the GL on June 7, 2018, Hamra representatives began their attempts, in earnest, to obtain the needed approvals for the OEA modifications from each of the parcel owners in the Shopping Center.

55. On June 13, 2018, Hamra's Vice President of Real Estate & Development, Ben Kaplan ("Kaplan"), sent an email to all the parcel owners, including Mooney, attaching the draft Third Amendment to the OEA for their review. In pertinent part, Kaplan's email stated that "[p]ursuant to a recent modification to our lease with the Parcel 3 owner, we have until August 6, 2018 to record a Third Amendment to Operation and Easement Agreement that memorializes the

agreed upon modifications. If we cannot do so, then we will terminate the Lease and move on to other projects."

56.     The proposed modifications in the draft Third Amendment to the OEA ("Draft Third Amendment") were minor and would not have negatively affected any of the retail stores in the Shopping Center.

57.     The Draft Third Amendment designated the "Permitted Building Area" for the new Parcel 3 Site Plan.

58.     The Draft Third Amendment permitted Parcel 3 to have a minimum of twenty-four (24) parking spaces for Panera customers.

59.     The Draft Third Amendment also amended Section 5.3(D)(ii) of the Initial OEA (as amended by Section 15 of the First Amendment) by deleting Section 5.3(D)(ii) of the Initial OEA (with its reference to Arby's) and inserting the following language in lieu thereof: "(ii) If and for so long as Parcel 3 is being used for the operation of a Restaurant, the owner or Restaurant Occupant from time to time of Parcel 3 shall be permitted to place signage on each side of the building located on Parcel 3."

60.     On June 14, 2018, Kaplan emailed a PDF of the Permitted Building Area for Parcel 3 to Mooney and the other parcel owners for their review. As of June 14, 2018, Mooney had received all the pertinent documents relating to the proposed redevelopment of Parcel 3.

61.     On July 2, 2018, Kaplan sent an email to Mooney and the other parcel owners which attached a revised Draft Third Amendment. In bold, underlined font, Kaplan wrote in the email "**Please note that all of the parties have agreed in concept to the attached, with the one owner exception of Heather Mooney. As of date we have not received any comments back from her**

**in regard to this document.**"  At the end of his email, Kaplan said, "We hope to be able to wrap this up no later than the following week by July 20th."

62.     Notwithstanding Helco's status as the Approving Party for the Developer Tract, Mooney believed that Helco could *not* consent to the changes in the Draft Third Amendment without the approval of two of Helco's tenants within Parcel 2 – a Sears Outlet store ("Sears") and Great Clips hair salon ("Great Clips").

63.     In an email dated July 12, 2018, Kaplan told KMK that all parcel owners had agreed to the Draft Third Amendment except Mooney.  As of July 12, 2018 Mooney had not even asked Sears or Great Clips for their approval of the Draft Third Amendment.

64.     On July 13, 2018, after receiving comments and proposed revisions from Mooney, Kaplan sent an email to Mooney and the other parcel owners attaching what Kaplan called "hopefully the final draft of the OEA Amendment for your review and execution."  Kaplan also explained in his email that "[i]n a conversation with [Mooney's] attorney, she has not gone to the two tenants in her portion of the center yet that she believes have approval rights over this revised OEA. She wanted to wait until we had a final document. My request is that since I believe we now have a final document for execution, that [Mooney] immediately goes to her two tenants to seek approval. As previously mentioned, it is hard for me to believe that having a brand new Panera Bread sitting out in front of this shopping center will not attract a lot of customers into this center."  Kaplan's email also informed the parcel owners of the upcoming deadlines: "[W]e do have a drop dead date with our current Landlord [*i.e.*, KMK] to complete this amendment by August 6, 2018. Therefore, our request from the group and [Mooney], that we have this attached document executed by all parties not later than July 27, 2018."

65.     On July 14, 2018, Big R approved the Draft Third Amendment.  In an email sent to the other Shopping Center parcel owners and to Kaplan, Big R's representative, Jerry Gibbs, spoke favorably of the Parcel 3 redevelopment plan, stating "a new Panera will bring more customers and traffic to the shopping center. Additionally the demographics of the Panera's customers are very favorable to all in the center. Nothing but good."

66.     On July 16, 2018, KMK approved the Draft Third Amendment in an email sent to the other Shopping Center parcel owners and to Kaplan.

67.     Aldi also approved the Draft Third Amendment on or before July 27, 2018.

68.     Despite Chicago Bread's request for approval of the Draft Third Amendment by all parcel owners no later than July 27, 2018, Mooney failed to approve or disapprove by that date.

69.     In an email sent to Mooney and the other parcel owners on July 31, 2018, Kaplan provided a status update: "As of today, we have all parties' approval and sign off with the exception of Heather Mooney. We have been told that she went to the two tenants that she believes has approval rights. And we have heard back from a local official that he heard that both tenants have no issue and would welcome Panera to the center.  Therefore, as stated below, our deadline to complete is August 6th to get this document fully executed. We still have not heard back from Heather or her attorneys if she is good with signing this document."

70.     As the Approving Party for the Developer Tract, Helco was not required to obtain the consent of Sears or Great Clips as a condition precedent to Helco's approval of the Draft Third Amendment.

71.     In an email exchange on August 1, 2018, Kaplan asked Mooney if she would sign the Draft Third Amendment assuming she could obtain the consents of Sears and Great Clips. Mooney responded, "Our attorney already explained this to you" but did not elaborate further.

72.     On August 2, 2018, Jerry Gibbs of Big R called Mooney to state his support for the Panera and encouraged Mooney to approve the Draft Third Amendment.

73.     Prior to the original OEA Contingency Date of August 6, 2018 Mooney never explained to Chicago Bread or KMK, in writing, the reasons why she believed Sears and Great Clips were required to consent to the Draft Third Amendment.

74.     As a direct and proximate result of not having obtained a response from Mooney in a timely fashion, on August 3, 2018 KMK and Chicago Bread executed a Third Amendment to the Ground Lease extending the OEA Contingency Date from August 6th to August 20, 2018.

75.     On August 7, 2018, Kaplan sent an email to Mooney apprising her of the new OEA Contingency Date of August 20, 2018.  In his email, Kaplan asked Mooney for an update on her efforts to obtain consents from Sears and Great Clips.  In no uncertain terms, Kaplan also told Mooney "that this is the absolute last extension and if we do not resolve and execute this OEA by the 20th, we will not move forward with this relocation."

76.     Despite the time-sensitive urgency of the matter and Kaplan's request for an update, Mooney did not respond to Kaplan's August 7, 2018 email.

77.     Another week passed from August 7 to August 14, 2018 without Mooney providing any additional information as whether Helco would approve the Draft Third Amendment.

78.     On August 14, 2018, a Sears representative informed McHenry government officials that Sears approved of the Draft Third Amendment to the OEA.  The Mayor of McHenry, Wayne Jett, relayed this information to Kaplan.  That same day, Kaplan called Mooney to confirm Sears' approval, but Mooney did not answer his call.  Kaplan left Mooney a voicemail asking for a return call, but Mooney did not call him back on August 14th.

79.     On August 15, 2018, Kaplan finally spoke with Mooney about the status of Helco's consent to the Draft Third Amendment.  During this call, Mooney told Kaplan that she would only approve the Draft Third Amendment if Chicago Bread agreed to indemnify Helco against any future claims brought by Sears that arise as a result of the construction of the Panera on Parcel 3. Kaplan informed Mooney that Chicago Bread would not agree to indemnify Helco in order to obtain Helco's approval to the Draft Third Amendment.

80.     On August 15, 2018, Mooney also had a call with Rohit Jacob ("Jacob"), Vice President of Real Estate and Supply Chain for Sears Hometown and Outlet Stores.  Jacob is the primary point of contact between Mooney and the Sears Outlet store located in Parcel 2 of the Shopping Center.

81.     During the August 15th telephone call between Mooney and Jacob, Jacob told Mooney that, in fact, Sears had no obligation under its lease agreement to consent to the proposed changes to the OEA in the Draft Third Amendment.  Notwithstanding this representation by Jacob, Mooney continued to insist that Sears provide its express consent as a condition precedent to Helco approving the Draft Third Amendment.

82.     Faced with Mooney's insistence that Sears consent to the modifications to the OEA during the call with Mooney on August 15th, Jacob attempted to negotiate a rent concession from Helco as a prerequisite to providing Sears' consent.  Specifically, Jacob requested a rent reduction on behalf of Sears in the amount of ten (10) percent during the Panera construction, as well as modifying an option to fix the rent for Sears at the current rent.  Mooney did not agree to Jacob's reduced rent proposal.  Nor did Mooney change her belief that Sears was required to provide its express consent as a condition precedent to Helco approving the Draft Third Amendment.

83. After the call on August 15th, Jacob sent Mayor Jett with an email summarizing the substance of his call with Mooney. In the email, Jacob described Sears' dispute with Mooney and stated "the landlord [*i.e.*, Mooney] however does not want to take any responsibility in this and at the same time, wants us to sign a document we are not required to sign nor do they need to ask us to sign. We definitely do not want the town to suffer because of this and ask that you coordinate with the landlord to sign the consent form without involving us."

84. A McHenry government official forwarded Jacob's email to Kaplan, who then informed KMK about this turn of events.

85. Mooney did not report the substance of her August 15, 2018 call with Jacob to Kaplan or to KMK.

86. On Thursday, August 16, 2018, Kaplan sent an email to Mooney apprising her of the information received from Jacob. In pertinent part, Kaplan's email stated: "Hi Heather, thanks for your call yesterday. After we spoke, I got some info from Sears that they clearly do not believe that they have the right to approve or disapprove this minor change in the OEA. With understanding this, just not sure why you would not sign the amendment at this point?"

87. Despite knowing that KMK and Chicago Bread had to obtain Mooney's consent within the next two business days in order to satisfy the OEA Contingency by August 20, 2018, Mooney did not respond to Kaplan's August 16, 2018 email, which requested an explanation for Mooney's continued refusal to sign the Draft Third Amendment in light of Sears' position.

88. There were no further communications between Hamra representatives and Mooney between August 16 and August 20, 2018. During this critical four-day period, Mooney neither approved nor disapproved the modifications proposed in the Draft Third Amendment. Nor

did she provide Hamra or KMK with a status update. Instead, Mooney continued her pattern of allowing extremely time-sensitive requests for approval to go unanswered.

89.     As a direct and proximate result of Mooney's unjustified and unreasonable delay in responding to repeated requests for Helco's approval of the Draft Third Amendment, Chicago Bread terminated the Ground Lease on August 20, 2018—the OEA Contingency Date. A copy of the termination letter is attached hereto as Exhibit 8.

90.     At approximately 4:35 p.m. CDT on August 20, 2018, KMK's counsel contacted Mooney's counsel and informed him that the Ground Lease had been terminated as a result of Mooney's extreme delay in responding to the requests for approval of the Draft Third Amendment.

91.     Mooney never sent a written explanation to Chicago Bread, KMK or any of the other parcel owners explaining her purported legal rationale for making Helco's approval of the Draft Third Amendment contingent upon the consent of Sears.

92.     Upon information and belief, Mooney's attempt to pin the blame for the delayed approval on Sears was pretextual and made in bad faith.

93.     On August 21, 2018, one day after the extended OEA Deadline expired, Mooney's attorney sent an email to Kaplan and the parcel owners with the following message: "We just received the consent from the second tenant [Sears]. Let us know the status of the transaction."

94.     In response to the August 21, 2018 email from Mooney's attorney stating that Sears' consent had been obtained belatedly, KMK's counsel reminded Mooney's attorney that the Ground Lease had been terminated the day before.

95.     As a direct and proximate result of the termination of the Ground Lease, KMK has lost all rent payments due to it from Chicago Bread during the initial 15-year term of the Ground Lease, which amount totals $1,266,250.00.

96.     Since the termination of the lease of August 20, 2018, KMK has been working diligently to find a new tenant to replace the vacant Arby's building on Parcel 3. Thus far, KMK's efforts to secure a new tenant for Parcel 3 have been unsuccessful.

**COUNT I**
**BREACH OF CONTRACT**
**(SECTION 6.5(B) OF OPERATION AND EASEMENT AGREEMENT)**
(***Against Helco Corp. and Trust 2958***)

97.     KMK realleges and incorporates by reference the allegations of the preceding Paragraphs 1-96 as if fully set forth herein.

98.     The OEA is a valid and enforceable contract. At all times relevant to this Complaint, Trust 2958 has been a party to the OEA.

99.     At all times relevant to this Complaint, Helco has been the beneficiary of Trust 2958.

100.    In Helco's capacity as the beneficiary of Trust 2958, Helco is the real party in interest that benefits from the OEA.

101.    As the real party in interest with the power to make decisions affecting land in the Shopping Center owned by Trust 2958, Helco is bound by the terms of the OEA and has the power to enforce the OEA's provisions.

102.    Under Section 1.1 of the OEA, Helco is the "Approving Party" of the Developer Tract.

103.    Helco's approval of the proposed changes in the Draft Third Amendment was required in order for the OEA to be amended pursuant to the Draft Third Amendment.

104.    Section 6.5(B) of the OEA provides, in pertinent part: "[W]henever a consent or approval (the "approval") is required, such approval shall not be unreasonably withheld or delayed.

Unless provision is made for a specific time period, each response to a request for an approval shall be given by the Party to whom directed within thirty (30) days of receipt of such request."

105.    On June 13, 2018, Mooney received the Draft Third Amendment for her review. The next day, June 14, 2018, Mooney received the site plans for the Permitted Building Area of the planned Panera on Parcel 3.

106.    As of June 14, 2018, Mooney had received all pertinent documentation relating to the proposed redevelopment of Parcel 3. However, Mooney did not circulate her initial comments on the Draft Third Amendment for at least one (1) month.

107.    On July 13, 2018, Kaplan, acting on behalf of Chicago Bread, requested Mooney's approval of the Draft Third Amendment no later than July 27, 2018.

108.    Between July 13, 2018 and July 27, 2018, the other parcel owners -- Big R, KMK, and Aldi -- each approved the Draft Third Amendment.

109.    Mooney did not respond to the request for her approval by the appointed deadline of July 27, 2018.  As of July 27, 2018, Helco was the only parcel owner in the Shopping Center that had not provided approval of the Draft Third Amendment.

110.    Mooney did not provide a written explanation for her failure to respond to Chicago Bread's request for her approval by July 27, 2018.

111.    Throughout July 2018, Mooney knew that the request for her approval of the Draft Third Amendment was time-sensitive, and she knew that the redevelopment of Parcel 3 could not go forward without Helco's approval.  Mooney also knew that the deadline to secure her approval was August 6, 2018, as explained in Kaplan's July 13, 2018 email to Mooney and the other owners.

112.    Notwithstanding Mooney's knowledge of the August 6, 2018 deadline, Mooney neither approved nor disapproved the Draft Third Amendment by that date.

113.    On August 7, 2018, Mooney learned, via an email from Kaplan, that the OEA Contingency Date had been extended until August 20, 2018.

114.    During the period between August 7 and August 20, 2018, Mooney continued to believe that she had to obtain Sears' consent to the modifications proposed in the Draft Third Amendment.

115.    Prior to August 20, 2018, at least one representative of Sears, Rohit Jacob, directly contradicted Mooney and told her that Sears was *not* required to consent to the proposed modifications of the OEA.

116.    In Helco's capacity as the Approving Party of the Developer Tract, Helco had discretion to approve or disapprove the Draft Third Amendment.

117.    No provision of the OEA required Mooney to obtain Sears' consent to the Draft Third Amendment.

118.    Upon information and belief, Mooney's assertion that Sears was required to consent to the Draft Third Amendment was inaccurate and made in bad faith.

119.    Mooney knew or should have known that the OEA did not require Sears' approval of the Draft Third Amendment as a prerequisite to Helco's approval.

120.    From August 7, 2018 onward, Mooney knew that if she did not approve prior to August 20, 2018, Chicago Bread would terminate the Ground Lease with KMK.

121.    Upon information and belief, Mooney's decision to delay giving approval of the Draft Third Amendment until after she had obtained Sears' approval was unreasonable and done in bad faith.

122.    Mooney knew or should have known that delaying her approval of the Draft Third Amendment until after the extended OEA Contingency Date of August 20, 2018 was unreasonable under the circumstances.

123.    KMK has fully performed its obligations under the OEA.

124.    As a result of Mooney's failure to approve or disapprove Chicago Bread's initial request for approval of the Draft Third Amendment by the requested response date of July 27, 2018, Helco breached its contractual obligation not to unreasonably delay approval of the Draft Third Amendment.

125.    As a result of Mooney's failure to approve or disapprove Chicago Bread's renewed request for approval by the original OEA Contingency Date of August 6, 2018, Helco breached its contractual obligation not to unreasonably delay approval of the Draft Third Amendment.

126.    As a result of Mooney's failure to approve or disapprove Chicago Bread's August 7th request for approval by the extended OEA Contingency Date of August 20, 2018, Helco breached its contractual obligation not to unreasonably delay approval of the Draft Third Amendment.

127.    In sum, Mooney's repeated failures to respond to requests for approval constitute three separate breaches by Helco of Section 6.5(B) of the OEA.

128.    As a direct and proximate result of Helco's unreasonable delay, which violated Section 6.5(B) of the OEA, Chicago Bread terminated the Ground Lease with KMK on August 20, 2018.

129.    As a direct of proximate result of Chicago Bread's termination of the Ground Lease, KMK has suffered damages in the form of lost rent due during the initial 15-year term of the Ground Lease, which totals $1,266,250.00.  Additionally, KMK has suffered damages in the form

of real estate tax payments it would have received from Chicago Brad had the Ground Lease not been terminated. KMK has also suffered damages in the form of costs and attorneys' fees associated with this action.

WHEREFORE, Plaintiff KMK Group, LLC respectfully prays that judgment be entered in its favor and against Trust 2958 and Helco Corp., on Count I in the amount of $1,266,250.00, plus lost real estate tax payments, accruing interest, costs, and attorneys' fees, all attributed to Helco Corp.'s contractual breaches as alleged herein, and for such other and further relief as the Court deems appropriate.

## COUNT II
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (*Against Helco Corp.*)

130.    KMK realleges and incorporates by reference the allegations of the preceding Paragraphs 1-129 as if fully set forth herein.

131.    At all times relevant to this Complaint, KMK had a reasonable expectancy of entering into a valid business relationship with Chicago Bread – namely, a 15-year landlord-tenant relationship arising out of the redevelopment of Parcel 3 of the Shopping Center.

132.    At all times relevant to this Complaint, Helco had knowledge of KMK's business expectancy. Specifically, Mooney knew that the Ground Lease would be terminated if Helco did not provide its approval of the Draft Third Amendment by the OEA Contingency Date.

133.    Helco, acting through its President (Mooney), intentionally interfered with KMK's expectancy by unreasonably refusing to approve the Draft Third Amendment in a timely fashion. Helco's deliberate refusal to approve the Draft Third Amendment prior to the OEA Contingency Date was unjustified and committed in bad faith.

134.     As a direct and proximate result of Helco's intentional and unjustified delay, the OEA Contingency in the Draft Third Amendment was not satisfied in time and Chicago Bread terminated the Ground Lease with KMK on August 20, 2018.

135.     All the other parcel owners in the Shopping Center approved the proposed modifications in the Draft Third Amendment prior to July 27, 2018.

136.     But-for Helco's intentional and unjustified delay, OEA Contingency would have been satisfied and KMK would have realized its business expectancy with Chicago Bread pursuant to the terms of the Ground Lease.

137.     As a direct and proximate result of Helco's intentional interference with KMK's business expectancy, which resulted in Chicago Bread's termination of the Ground Lease, KMK has suffered damages in the form of lost rent due during the initial 15-year term of the Ground Lease, which totals $1,266,250.00.  Additionally, KMK has suffered damages in the form of real estate tax payments it would have received from Chicago Brad had the Ground Lease not been terminated.  KMK has also suffered damages in the form of costs and attorneys' fees associated with this action.

138.     Additionally, for Helco's deliberate and willful tortious conduct, KMK requests punitive damages for Count II in an amount not less than $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KMK Group, LLC respectfully requests that this Court enter judgment in its favor and against Defendants on all Counts as follows:

A. Awarding Plaintiff damages for lost rent payments due under the Ground Lease in the amount of $1,266,250.00 or as may be established by the evidence;

B. Awarding Plaintiff damages for lost real estate tax payments due under the Ground Lease in an amount to be established by the evidence;

C.  Awarding Plaintiff punitive damages in an amount not less than $1,000,000.00;

D.  Awarding Plaintiff its reasonable attorneys' fees and costs incurred in this matter; and

E.  Awarding Plaintiff any additional damages or other relief that this Court deems equitable and just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff KMK Group, LLC hereby demands a trial by jury on all issues so triable.

Dated:  September 18, 2018                    Respectfully submitted,

By: */s/ David M. Poell*

Kenneth E. Rechtoris (6190285)
KRechtoris@sheppardmullin.com
David M. Poell (6302765)
DPoell@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
Tel.:  (312) 499-6300
Fax:  (312) 499-6301

*Counsel for KMK Group, LLC*